## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **No. 20-cr-260 (TSC)** |
| | **:** | |
| **KENNETH DEBERRY,** | **:** | |
| | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Sentencing Memorandum as to defendant Kenneth Deberry. For the reasons set forth below, the government requests the Court sentence the defendant to 33 months of incarceration, followed by three years of supervised release, on Count One, and 180 days of incarceration, consecutive to Count One, on Count Two.

### FACTUAL AND PROCEDURAL BACKGROUND

*Facts of the Offenses*

On Saturday, November 14, 2020, at approximately 4:00 p.m., Metropolitan Police Department officers responded to 17th and I Streets, NW, Washington, D.C. in reference to a number of reported assaults occurring during the "Million MAGA March" taking place in downtown Washington, D.C. Members of the media provided officers with video footage capturing some of the assaultive conduct. One of the videos showed the defendant, Kenneth Deberry, assaulting another individual by punching him with a closed fist to the face. Based on that footage, officers placed the defendant under arrest for assault.

During a search of the defendant incident to his arrest, the officers recovered a firearm in the defendant's waistband. The recovered firearm was determined to be a black Interarms

Revolver, Special .38 Caliber, Serial Number D409128. The firearm was loaded with five (5) rounds.  There are no firearms or ammunition manufacturers in the District of Columbia, thus, the firearm and ammunition traveled in interstate commerce.

The defendant agreed to a custodial post-arrest interview. During that interview, the defendant admitted that he came armed to the protest, allegedly to protect himself. At the time he possessed the firearm at a public demonstration in downtown Washington, D.C., the defendant was aware that he had previously been convicted of multiple offenses punishable by more than a year of imprisonment, including D.C. Superior Court Case Numbers 2011 CF3 023535 (Robbery), 2008 CF1 014507 (Second Degree Child Sexual Abuse), 2007 CF2 019246 (Carrying a Pistol Without a License), and 2002 FEL 005949 (Attempted Robbery and Bail Reform Act violation (misdemeanor)).

After being charged for the firearms offense above, as well as misdemeanor Simple Assault and Disorderly Conduct (Inciting Violence) in D.C. Superior Court Case Number 2020 CMD 008767, the defendant was initially detained without bond but was later released to home detention. On May 14, 2021, the defendant was in Washington, D.C., at the location of his home detention, with his mother and stepfather, R.H. During an argument with R.H., the defendant began strangling R.H. with both hands. When R.H. struck the defendant in the crotch in an attempt to get him to let go, the defendant pushed R.H. into the sofa and repeatedly punched him in the face with a closed fist.

When R.H. left the home in an attempt to flee the assault, the defendant followed R.H. outside and pushed him down from behind, causing R.H. to hit his face on the ground. Following the assault, R.H. was hospitalized for two days and his injuries included, among other things, a collapsed lung, six fractured ribs, a broken nose, and a missing tooth. The defendant was arrested

and charged with domestic simple assault for this conduct in D.C. Superior Court Case Number 2021 DVM 000531. A photograph showing some of the injuries caused by the attack is included below (Figure 1).



*Figure 1*

*Victim R.H.*

R.H. has indicated he continues to suffer discomfort as a result of the defendant's assault. R.H. wanted the Court to know that he still wonders why the defendant attacked him and believes the defendant is in need of Anger Management classes. R.H. agrees with the government's sentencing recommendation.

*Procedural Background*

On November 24, 2020, a federal grand jury returned a one-count Indictment charging the defendant with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a

Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) for the firearm found on the defendant's person during his arrest on or about November 14, 2020.

On October 20, 2021, the United States filed a Superseding Information. The Superseding Information charged: Count 1 for Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and Count 2 for Simple Assault, in violation of 22 D.C Code § 404(a)(1), for the defendant's conduct on or about November 14, 2020, and May 14, 2021, respectively.

On October 22, 2021, the defendant pleaded guilty pursuant to Rule 11(c)(1)(B) plea agreement to Counts One and Two of a Superseding Information. Count One charges the defendant with Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), for his conduct on November 14, 2020; and Count Two charges the defendant with Simple Assault, in violation of 22 D.C.C. § 404(a)(1), for the defendant's conduct on or about May 14, 2021. In consideration of the defendant's guilty plea to the offenses in Counts One and Two, the government agreed not to further prosecute the defendant for the conduct included in the Statement of Offense for November 14, 2020, to dismiss charges pending in D.C. Superior Court Case Number 2020 CMD 008767 at the time of sentencing, and refrain from bringing greater charges related to the defendant's conduct charged originally in D.C. Superior Court Case Number 2021 DVM 000531. The DVM matter will also be dismissed at the time of sentencing.

## SENTENCING GUIDELINES CALCULATIONS

*Criminal History*

The defendant's criminal history is troubling both in the nature and circumstances of his past offenses. On February 26, 2004, the defendant was convicted of Attempted Robbery and Bail Reform Act Violation (misdemeanor), D.C. Superior Court Case Number 2002 FEL 005949. His probation and then his supervised release were revoked, resulting in multiple periods of incarceration for these offenses. On October 31, 2008, the defendant was convicted of Carrying a Pistol Without a License, Case Number 2007 CF2 019246, and sentenced to 12 months of incarceration and 1 year of supervised release, which was ultimately also revoked in favor of additional incarceration. On October 29, 2008, while on pre-trial supervision in the gun case, the defendant was convicted of Second Degree Child Sexual Abuse, Case Number 2008 CF1 014507, and sentenced to 40 months of incarceration and 10 years of supervised release. On March 26, 2012, while on supervised release in the child sexual abuse case, the defendant was convicted of Robbery in D.C. Superior Court Case Number 2011 CF3 023532 and sentenced to 20 months of incarceration and three years of supervised release, which was also revoked due to the defendant committing new offenses. At the time of the instant firearms offense, the defendant was under the supervision of the D.C. Superior court in Case Number 2018 CTF 019013 for a conviction of Driving Under the Influence (his supervision had been converted from supervised to unsupervised

just two months before the firearms offense). His probation was terminated as successful in that matter on April 12, 2021.

The government agrees with the Probation Office's findings and calculations related to the defendant's convictions.[1] Accordingly, the defendant's criminal history score is 17, placing him in Criminal History Category VI.

*Applicable Sentencing Ranges*

With respect to the firearms offense, all parties agree that the final offense level is 12. The government further agrees with the U.S. Probation Office that multiple of the defendant's prior convictions factually meet the definition of a crimes of violence but do not meet the technical requirements under the Guidelines to increase the defendant's offense level. Draft Presentence Investigation Report ("PSR"), ECF No. 31, at ¶¶ 38, 41, 43. At Criminal History Category VI, the guidelines range for offense level 12 is 30 to 37 months. The plea agreement provided an Estimated Guidelines Range of 27 to 33 months based on an erroneous calculation of the defendant's criminal history, as discussed above in footnote 1. The government notes that the plea agreement specifically provides that the determination by the Court or the Probation Office that a "guidelines range different from the Estimated Guidelines Range is applicable[] . . . will not be a basis for withdrawal or recission of this Agreement by either party" and that the parties agree "to allocute for a sentence within the Guidelines range, as ultimately determined by the Court, even if the

---

[1]     Based on information then available and its understanding at the time, in its plea letter, the government scored the defendant's convictions in 2002 FEL 5949 and 2007 CF2 19246 at 0 points. However, the Probation Office identified additional periods of incarceration imposed by the Parole Commission that change the analysis as to those two convictions, resulting in 3 points for each. *See* Draft Presentence Investigation Report ("PSR"), ECF No. 31, at ¶¶ 38, 40. The government further understands from the Probation Office that the Final PSR for this case, when filed, will score the conviction in paragraph 42 at 2 points (rather than 1 point), as the plea letter from the government did. In any event, that additional point does not change the defendant's Criminal History Category or applicable guidelines range.

Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein." Plea Agreement, ECF No. 29, at ¶¶ 4.C, 6.

With respect to Count Two, which charges Simple Assault in violation of 22 D.C. Code § 404(a)(1), neither the U.S. Sentencing Guidelines nor the D.C. Voluntary Sentencing Guidelines apply. The offense carries a maximum sentence of 180 days of imprisonment and a fine of up to $1,000, pursuant to 22 D.C. Code § 3571.01.  In addition, the Court must impose an assessment of $50 to $250 per misdemeanor conviction to the Crime Victims Compensation Fund, pursuant to 4 D.C. Code § 516(a).

## SENTENCING FACTORS

With respect to the firearms offense, pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary to comply with the purposes of the statute which include the need for the sentence: (A) to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training. In addition, the statute requires the court to consider a number of factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims. While neither the U.S. nor D.C. Sentencing Guidelines apply to the assault offense in this case, the D.C. Code provides that in felony matters the Court "shall impose a sentence that: (1) Reflects the seriousness of the offense and the criminal history of the offender; (2) Provides for just punishment and affords adequate

deterrence to potential criminal conduct of the offender and others; and (3) Provides the offender with needed educational or vocational training, medical care, and other correctional treatment." 24 D.C. Code § 403.01(a).

## ARGUMENT

The government submits that a sentence of 33 months of incarceration, followed by three years of supervised release, on Count One of the Superseding Information, and a sentence of 180 days of incarceration, consecutive to Count One, on Count Two, is amply justified by the facts of this case and analysis of the statutory factors.

### *The Seriousness of the Offenses*

The nature of both offenses is indeed serious and shows a pattern of aggressive, impulsive behavior. Turning first to the defendant's possession of a loaded firearm, the possession of a firearm by a convicted felon is exceedingly dangerous, and the increase in violent crimes involving firearms (and firearms-related homicides) illustrates the negative impact that the unregulated flow of firearms can have on a community. Even where an offender does not fire or use the weapon, as was the case here, the effect of having an illegal firearm in a household or on the street can profoundly affect relationships between families, friends, enemies, and law enforcement. In the instant matter, the defendant stated that he brought the loaded firearm with him to downtown D.C. to protect himself while protesting. The defendant's conduct and statements to law enforcement during that incident showed a willingness to engage in unlawful violence using that firearm, and the implication of one's decision to carry a loaded firearm, is that they are willing to use it if they deem the situation necessary. The defendant's possession of a loaded firearm despite knowing he was not allowed to do so posed a serious threat to both himself and anyone who may have encountered him. The offense is all the more serious in light of the defendant's criminal history,

8

which includes no fewer than four prior felony convictions. Indeed, that firearm was recovered during a search incident to arrest after the defendant was arrested for assaulting another individual (admittedly, one who allegedly also engaged in violence).

As for the assault reflected in Court Two of the Superseding Information, the conduct was incredibly serious, and the bodily injury was sufficient such that it could have been charged as a felony, rather than a misdemeanor. The defendant was at the home where he resided with his mother and stepfather, and where he was residing while on home detention when he violently assaulted his stepfather. The defendant strangled the victim with both hands, and proceeded to punch the victim in the face repeatedly, with a closed fist. The victim attempted to flee the assault by leaving the home, and even then, the defendant followed the victim outside and pushed him down from behind causing the victim to hit his face on the ground. The victim was severely injured and following the assault, the victim was hospitalized for two days.  The victim's injuries included, among other things, a collapsed lung, six fractured ribs, a broken nose, and a missing tooth. That the defendant committed such a violent assault while on home detention is concerning, and it proves to further highlight the defendant's continued disrespect for the criminal justice system during periods of supervised release. Moreover, this offense was committed separate and apart from the firearms offense in this case, warranting a consecutive sentence.

*The Defendant's History and Characteristics*

The defendant's criminal history is of particular concern in this case. The defendant has numerous felony convictions, including one firearm conviction for carrying a pistol without a license. Yet despite these convictions, the defendant has once again returned to the community and elected to unlawfully arm himself with a firearm, and then – while on supervision before this Court – unlawfully attack and assault a family member. None of the prior convictions appear to

have served to deter him from engaging in this very dangerous behavior, nor have his periods of supervised release shown to deter the defendant from engaging in further criminal conduct.  For the defendant to again obtain a firearm and ammunition after numerous felony convictions, combined with the defendant's assault of a family member while under court supervision for that offense, weighs heavily against a below-guidelines sentence in this case.

Furthermore, the defendant's history and characteristics also includes concerning uncharged conduct. As the Court is already aware, the assault on the defendant's stepfather is not believed to be the defendant's only egregious conduct while on release *in this case*. As discussed in the government's previously filed Motion to Revoke Defendant's Pretrial Release, ECF No. 21, and noted in the Pretrial Service Report dated March 31, 2021, the defendant left his residence, without permission, and attracted police attention after allegedly assaulting his girlfriend. The defendant's GPS monitor showed him to be present at the address where police were called for report of a domestic disturbance. This incident was reported by a witness who contacted Pretrial Services and stated the defendant had attacked the individual known to be the defendant's girlfriend at the time, strangling, punching, and pulling out her braids. While the victim did not want to file charges against the defendant, this conduct is relevant to the Court's consideration of the seriousness of the defendant's conduct.

The government notes the challenges the defendant faced growing up, including family circumstances where both parents engaged in some form of illicit substance abuse and were unable to provide a stable or positive home environment and where disturbing events took place.  Draft PSR, at ¶ 59. The defendant's upbringing included frequent moves throughout the District of Columbia and a reliance upon public assistance for financial support. *Id.* The defendant has four children, in whose lives he reportedly remains involved and for whom he provides voluntarily.

Draft PSR, at ¶ 65–68. Additionally, the defendant has documented mental health challenges; while he has previously been prescribed medication, the defendant has denied having any mental health concerns and declined to take any medications, though he did request to receive behavioral counseling. Draft PSR, at ¶ 84. The defendant also reported an extensive history of alcohol and marijuana use. Draft PSR, at ¶ 85.

The government would be remiss to suggest that the defendant's upbringing has not played some role in where the defendant has found himself today, and it is the government's hope that while the defendant is serving his sentence of incarceration that he will receive the benefit of the Bureau of Prison's substance abuse treatment programs, as suggested among the recommendations by U.S. Probation.

*Respect for the Law, Protection of the Public, and Deterrence*

The defendant has shown poor compliance with post-conviction supervision and has had both probation and supervised release revoked in nearly every instance where it had been imposed. The government's requested sentence is appropriate here, where this is the defendant's fifth felony offense, and his conduct while on supervised release was particularly egregious, as detailed in previous sections of this memorandum.

With respect to the firearms offense, the government believes that a period of incarceration of 33 months, the high-end of the guidelines range contained in the government's plea letter, and the middle of the applicable guidelines range as determined by the Probation Office, is both necessary and sufficient to protect the community from the defendant during the period of incarceration and to serve to deter the defendant and other individuals from engaging in similar conduct. The government is hopeful that the defendant can take advantage of programs offered by the Bureau of Prisons and will engage in services through Probation upon his release from the

Bureau of Prisons. Additionally, the government is compelled to request three years of supervised release. It is essential, upon release, that the defendant enter a structured environment that will enable him to rehabilitate. Given the defendant's extensive history of non-compliance with supervision, where in nearly every instance of supervised release the defendant has reoffended, imposing the maximum three-year period will provide the greatest degree of deterrence and protection to the community and ensure that the Court has the ability to take action in the unfortunate event that the defendant commits a new offense.

With respect to the assaultive offense, the government submits that the maximum period of incarceration under the statute of conviction is appropriate. The government agreed to offer the defendant the opportunity to plead guilty to the misdemeanor offense of Simple Assault, but the defendant's conduct was not merely a misdemeanor: the victim of the defendant's brutal attack was hospitalized and sustained multiple injuries, including those depicted in Figure 1, above. Accordingly, the defendant should receive no further benefit in relation to this offense and should receive a sentence of 180 days of incarceration, consecutive.

The government's request is reasonable. According to the U.S. Sentencing Commission's Interactive Data Analyzer, defendants who were sentenced pursuant to §2K2.1 in Fiscal Year 2020, with a criminal history category of VI, typically received sentences greater than the government's request here. Specifically, of 1,540 cases reported to the Commission, 8.7% received a sentence of up to 24 months, 33.6% received a sentence of 24 to 59 months, 36.2% received a sentence of 60 to 119 months, and 21.4% received a sentence of 120 months or more (Figure 2). *See* U.S. Sentencing Commission Interactive Data Analyzer, *available at* https://ida.ussc.gov/ analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FIDA%2F_portal%2FIDA%20Dashboa rds. In addition, in Fiscal Year 2020, of 7,090, defendants sentenced pursuant to §2K2.1, 50.5%

received a sentence within the guidelines range, and 39.3% received a variance. *See* 2020 Annual Report and Sourcebook of Federal Sentencing Statistics, Table F-6, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/2020-Annual-Report-and-Sourcebook.pdf. These statistics demonstrate that the government's request is well within the framework of fair and just sentences as determined by courts across the nation.



**Distribution of Sentence Length**
Fiscal Year 2020

Up to 24 Months 8.7%
24 to 59 Months 33.6%
60 to 119 Months 36.2%
120 Months or More 21.4%

The figure includes the 1,540 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of probation only are included here as zero months.
**FILTER:**
Fiscal Year: 2020; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: Firearms; Guideline: §2K2.1; Sentencing Zone: All; Criminal History: VI

*Figure 2*

**CONCLUSION**

For all these reasons, the government requests that the Court sentence the defendant to 33 months of incarceration, to be followed by three years of supervised release, on Count One of the Superseding Information, and 180 days of incarceration, consecutive to Count One, on Count Two of the Superseding Information.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     /s/ *E. Meg Ariotti*_____
Emily (Meg) Ariotti
D.C. Bar No. 1739121
Special Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office for D.C.
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
Email: Meg.Ariotti@usdoj.gov
Phone: (202) 870-6770

/s/ *Mary L. Dohrmann*_____
Mary L. Dohrmann
NY Bar No. 5443874
Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office for D.C.
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
Email: Mary.Dohrmann@usdoj.gov
Phone: (202) 252-7035